<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| J.A.P., | : | **Civil Action No. 25-16704 (SRC)** |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court on appeal by Plaintiff J.A.P. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act ("Act").   This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. CIV. R. 78.1(b), finds that the Commissioner's decision will be **AFFIRMED.**

**I.    BACKGROUND**

In brief, this appeal arises from Plaintiff's application for benefits, alleging disability beginning July 1, 2023.   A hearing was held before Administrative Law Judge Theresa Merrill (the "ALJ") on May 8, 2025, and the ALJ issued an unfavorable decision on June 23, 2025. Plaintiff sought review of the decision from the Appeals Council.   After the Appeals Council denied Plaintiff's request for review on August 20, 2025, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of June 23, 2025, the ALJ found that, at Step One, Plaintiff had not engaged in substantial gainful activity since the onset date of July 1, 2023. Tr. 20. At Step Two, the ALJ found Plaintiff had severe impairments of: learning disorder; adjustment disorder with mixed anxiety and depressed mood; borderline intellectual functioning (BIF); dyslexia; asthma; and obesity (20 CFR 404.1520(c) and 416.920(c)). *Id.* At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id.* at 21. At Step Four, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she must avoid concentrated exposure to extreme cold or extreme heat, to humidity and to wetness, and to fumes, odors, dusts, gases, heavy perfumes and poor ventilation. *Id.* at 26. The ALJ further found that Plaintiff is able to understand, remember and carry out simple instructions, able to perform work that is not in a team environment, able to tolerate occasional interaction with coworkers and the public, able to adapt to changes in the workplace that are occasional, and, due to lapses in concentration, focus or memory, and/or the need for unscheduled breaks, would be off task 5% of the day. *Id.* Further, due to impairments, Plaintiff would be absent once per month. *Id.* At Step Four, the ALJ also found Plaintiff is capable of performing past relevant work as a material handler (DOT 922.687-058), explaining that this work does not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 404.1565 and 416.965). *Id.* at 37. Accordingly, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Act from the alleged onset date to the date of the decision. *Id.* at 38.

2

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded because the ALJ's specific RFC limitations regarding being off-task and absenteeism are arbitrary and not sufficiently tied to evidence.

## II.    LEGAL STANDARD

As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how her impairments, whether individually or in combination, amount to a qualifying disability.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   As to the harmless error doctrine, the Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination.   The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Id.*   In such a case, "the claimant has the 'burden' of showing that an error was harmful."  *Id.* at 410.   Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful. At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability.   In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful.

## III.    LEGAL ANALYSIS

Plaintiff argues that the specific limitations pertaining to being off-task and absenteeism are arbitrary and are not supported by substantial evidence in the record.   Pl.'s Br. at 16. Although Plaintiff does not dispute the ALJ's finding that Plaintiff is impacted by the effects of off task behavior and absenteeism, Plaintiff argues that the specific limits identified by the ALJ

3

were the product of her own lay opinion. *Id.* at 17. Plaintiff contends that the ALJ's alleged failure to provide adequate and supportive evidence for her findings constitutes harmful error, thus warranting remand. *Id.* Defendant responds that substantial evidence supports the ALJ's RFC finding because the ALJ explained in detail why she came to the determination that a 5% off-task limitation was appropriate. Def.'s Br. at 4. Defendant contends that Plaintiff's argument largely amounts to a recitation of the same evidence the ALJ already considered and that Plaintiff improperly requests this Court to reweigh the same. *Id.* at 5.

The ALJ's analysis begins with recognition of Plaintiff's history of receiving special education throughout her schooling due to a learning disability and her prior work history. Tr. 27. It continues with a discussion of a Third Party Function Report from Plaintiff's aunt, who has supervised her employment, describing Plaintiff's poor time management skills, her difficulty completing tasks, detailing her issues being easily distracted, but also recognizing her ability to complete personal care tasks, chores, and maintain her independence. *Id.* The ALJ also discusses another Function Report from January 25, 2024 in which claimant stated that her conditions limit her ability to work because she has a learning disability, which makes it harder for her to concentrate, understand, keep a job and show up for work. *Id.* The ALJ then discusses Plaintiff's testimony at her hearing during which she mentioned her status as a part-time worker for over five years, recalled her previous work history, and expressed that she experienced excessive worry or overthinking. *Id.* at 28.

After full consideration of the record, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 29. The ALJ's

4

decision goes on to discuss the reports from Plaintiff's consultative examination from November 2014[1], where Plaintiff had significant deficits in her expressive and receptive language skills, but also presented with age-appropriate pragmatic language skills, good intelligibility, understanding, ability to maintain topic and eye contact during conversation, and good overall presentation with an "improved" prognosis. *Id.* at 31, citing 585-88. The decision also discusses Plaintiff's psychological consultative examination from 2016, where Plaintiff was noted to have good attention and concentration with a deficiency in her IQ relative to those her age, weaknesses in verbal comprehension in working memory but relative strengths in perceptual reasoning and processing speed. *Id.* The decision then discussed Plaintiff's therapist visits, including a November 2022 visit in which Plaintiff demonstrated a normal memory and orientation, and a December 2022 visit in which again she demonstrated normal mental status and indicated that she was working part-time and would be seeking another part-time job. *Id*. at 32.

The decision addresses Plaintiff's March 2024's consultative examination in which Plaintiff reported a history of part-time employment, that she was currently undergoing no mental health treatment, denied significant difficulties with concentration, and was experiencing symptoms of anxiety due to issues with her current living situation. *Id.* at 33, citing 537-38. On examination, Plaintiff had issues with expressive and receptive language, but she was cooperative with coherent thought process, normal thought content, and had a mildly nervous affect. *Id.* at 33, citing 538. Regarding her cognitive functioning, she was properly oriented, had "fairly intact" concentration, and had a "low average to average" intellectual ability". *Id.* Regarding her daily

---

[1] The Court notes that while the ALJ's decision identifies this consultative examination as having occurred in November 2024, the record reflects that the examination took place in 2014.

5

activities, Plaintiff stated that she dressed and groomed independently, could perform everyday tasks like cooking, cleaning, laundry, and shopping, managed her own finances and medication regimen, and had a driver's license.   *Id.* at 33-34, citing 538-39.

Following the ALJ's discussion of Plaintiff's medical evidence, the ALJ concluded as follows:

> The evidence supports finding severe learning disability (including language disability, such as dyslexia), BIF, and adjustment disorder with mixed anxiety and depressed mood, resulting in "moderate" limitations in the broad areas of mental functioning, i.e., "B" criteria. Accordingly, the claimant has the MRFC to be able to understand, remember and carry out simple instructions, i.e., limited to performing "unskilled" work; perform work that is not in a team environment, and tolerate occasional interaction with coworkers and the public; and adapt to occasional changes in the workplace. **Also, due to lapses in concentration, focus or memory, and/or the need for unscheduled breaks, she would be off task for 5% of the workday. Additionally, due to her combination of impairments (mental and physical), she would be absent one day per month. However, the evidence does not support the finding of greater or additional mental limitations. Despite expressive and receptive language issues (e.g., 5F/2; 7F/4), learning disorder (including possible dyslexia), and BIF (<u>see</u> 1F/3), with an FSIQ of 76 on prior testing (WAIS-IV) in 2016 (1F/2), the claimant has a drivers license, intact ADLs, and mental status exam on psychological CE in March 2024 showed fairly intact attention and intellectual ability estimated to be at the low average to average range (5F/2).** While the examiner indicated that she could "benefit from vocation[al] and housing assistance," the claimant was considered capable of managing her own funds (5F/3), which she reported that she does despite finding budgeting "challenging." She also stated that she is able to manage her medication regimen and she relies on public transportation, as she does not own a car (5F/2). Thus, the above MRFC with "moderate" limitations accounts for functional difficulties arising from the claimants mental MDIs.
>
> As for medical opinions and PAMFs, the undersigned cannot defer or give specific evidentiary weight, including controlling weight, to any PAMFs or medical opinions, including those from medical

sources. The undersigned has fully considered medical opinions and PAMFs as follows:

The State agency (DDS) consultants PAMFs are partially persuasive (see 2A; 4A; 6A; 8A). At the reconsideration-level in July/August 2024 (e.g., 8A), DDS found severe learning disorder, obesity, all disorders of thyroid gland (except malignant neoplasm), depressive and anxiety disorders, and BIF, with moderate limitations in the respective mental "B" criteria (8A/5-6). Physically, the claimant was limited to a medium exertional capacity, along with postural and environmental restrictions, including the need to avoid concentrated exposure to extreme cold, extreme heat, pulmonary irritants (i.e., fumes, odors, dusts, etc.) and hazards of machinery, heights, etc. (8A/7-8). As to her MRFC, she was found retain the capacity to understand and carry out simple instructions, limiting her to unskilled work; **may have occasional difficulty focusing and concentrating but in general, she can complete a normal workday and work week**, though she might need some additional supervision in learning new tasks; she would work best with occasional contact with the public and coworkers; and changes should be introduced slowly and gradually (see 8A/8-11). The DDS medical and psychological consultants have program knowledge, reviewed the available case record, supported their findings with specific evidence, and the overall record is consistent with medium exertional RFC with environmental restrictions for pulmonary irritants, and moderate B criteria with associated MRFC limitations for simple, unskilled work with reduced demands for social interaction and adapting to workplace changes. However, the medical evidence of record is not consistent with hazard limitations or the need for reminders/special supervision. **On the other hand, DDS did not adequately assess time off task due to lapses in concentration, focus or memory and/or the need for unscheduled breaks, or for absences due to her impairments.** Otherwise, their RFC for medium work, with environmental restrictions due to asthma, and mental/social limitations due to learning disorder, dyslexia, BIF and symptoms of anxiety/depression, is consistent with the overall record.

*Id.* at 35 (emphasis added).

While the Court recognizes that the ALJ did not specifically explain why Plaintiff would be off-task for 5% of the workday, remand on that basis alone is unwarranted. Rather, the

significance of the ALJ's selection of the number "5" should be understood by reference to the opinion frequently expressed by vocational experts at Social Security hearings that the line of unemployability falls at being off-task for 10% or more of the workday.   The finding that Plaintiff would be off-task for 5% of the workday reflects Plaintiff's limitations in concentration, focus and memory.   By including this 5% off-task limitation in the RFC, the ALJ acknowledged that Plaintiff's limitations would impair her ability to remain fully attentive throughout the whole workday, while also acknowledging that those limitations do not rise to the level that they would prevent Plaintiff from successful employment.

Further, substantial evidence supports the ALJ's conclusion that Plaintiff experienced concentration-related limitation that warranted *some* accommodation but did not require greater RFC limitations.   The State Agency reviewers assessed her ability to sustain concentration while performing simple tasks as not significantly limited.   Tr. 109, 143.   The Third Party Function Report completed by Plaintiff's aunt notes Plaintiff's poor time-management, difficulty completing tasks, and tendency to become easily distracted.   *Id.* at 373-381.   Simultaneously, the record reflects that Plaintiff is able to manage her personal care, perform house chores, and maintain her independence.   *Id.* at 390-394.   Viewed as a whole, this evidence supports the ALJ's conclusion that Plaintiff requires some concentration-related limitation, but not one that rises to a disabling level when performing simple tasks.   The Court's responsibility on appeal is to assess whether the ALJ's finding is supported by substantial evidence, and the Court is satisfied that substantial evidence supports the ALJ's 5% off-task limitation.

Plaintiff similarly argues that the ALJ failed to articulate why she established a limitation of needing to be absent once a month.   Pl.'s Br. at 25.   Defendant fails to address this argument.

8

The ALJ's decision reads as follows:

> Additionally, due to her combination of impairments (mental and physical), she would be absent one day per month.

Tr. 23.

The Court acknowledges that the ALJ failed to provide further explanation or elaborate on the evidence considered for establishing this particular limitation.  However, the absence of an explanation alone is insufficient to warrant remand.  Plaintiff bears the burden of demonstrating that any error was harmful.  *Shinseki*, 556 U.S. at 410.  Thus, Plaintiff must show that not only did the ALJ inadequately explain the absenteeism limitation, but also that this deficiency prejudiced her materially in its effect on the ultimate disability determination, which Plaintiff has failed to show.  Plaintiff has not identified evidence in the record that would support a determination that, due to the claimant's combination of mental and physical impairments, she would require more monthly absences.  Rather, Plaintiff merely points out that this limitation is insufficiently explained.  Thus, Plaintiff has failed to meet her burden under *Shinseki* of establishing that the alleged error was material and harmful.

Accordingly, the Commissioner's decision is supported by substantial evidence and will be affirmed.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED.**

An appropriate Order accompanies this Opinion.

                    */s/ Stanley R. Chesler*
                  STANLEY R. CHESLER, U.S.D.J.

Dated: July 24, 2026

9